Pennsylvania Dental Association et al., Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent; Medical Service Association of Pennsylvania, t/d/b/a Pennsylvania Blue Shield, Intervenor.

48

Argued December 6, 1978, before President Judge
Bowman and Judges Wilkinson, Jr., Mencer, Rogers,
Blatt, DiSalle and MacPhail. Judges Crumlish,
Jr. and Craig did not participate.

Thomas A. Beckley, with him William J. Madden,
Jr., Bradley S. Gelder, and, of counsel, Beckley &
Madden, for petitioners.

David T. Kluz, Assistant Attorney General, for
respondent, Commonwealth.

*William H. Wood,* with him *Robert L. Rubendall,* and *Keefer, Wood, Allen and Rahal,* for respondent, Pennsylvania Blue Shield.

OPINION BY JUDGE MACPHAIL, March 5, 1979:

This is an appeal by the Pennsylvania Dental Association (PDA) and several individual dentists (Petitioners) from a decision of the Department of Insurance (Department) approving Amendment No. 5 to Filing No. 5-H-1970, a comprehensive prepaid dental program (Master Contract), which provides for dental insurance payments from Pennsylvania Blue Shield (Blue Shield) to its subscribers and participating dentists.

After the proposed amendment had been submitted to the Department in February of 1977 and after proper advertising, a public hearing was held on June 17, 1977. At the hearing testimony was presented by the Department, Blue Shield and PDA. On July 19, 1977, the Insurance Commissioner for the Commonwealth (Commissioner) approved the amendment.

Our scope of review is set forth in Section 44 of The Administrative Agency Law (Law), Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.44.[1]

---

[1] The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act [relating to practice and procedure of Commonwealth agencies] have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. Repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1244]. A similar provision is now found at 2 Pa. C.S. §704.

All insurance contract provisions must be approved by the Department before they may be implemented.[2] Prior to ruling upon any revisions, amendments or original contracts, the Department customarily affords interested persons the opportunity to be heard. Our case law indicates that

> where, as here, a statute confers discretion upon an administrative tribunal, its actions are subject to judicial review only to determine whether or not there has been an abuse of discretion or a purely arbitrary exercise of authority. . . . Whether the court may have reached a different opinion or judgment in a particular case is not sufficient to reverse adminstrative action because judicial discretion may not be substituted for administrative discretion. (Citation omitted.)

*Slanina v. Sheppard,* 27 Pa. Commonwealth Ct. 376, 379, 366 A.2d 963, 965 (1976). PDA and Petitioners (collectively, Appellants) contend that the Department's hearing in the instant case was conducted on an informal basis rather than a formal basis and that as a result "the atmosphere at the hearing prevented a record capable of supporting Department's adjudication." Appellants specifically complain that they were denied the right to cross-examine witnesses. We note from the record that the first witness called at the hearing was Mr. Archer, from the Department, who stated on behalf of the Commissioner that the hearing was permissive and that it was the Commissioner's position that he could act upon the amendment without a hearing. Appellants made no objec-

---

[2] [T]he form and content of all contracts between any [health service corporation] and its subscribers or group of subscribers . . . shall be approved by the department before they become effective.

40 Pa. C.S. §6329.

tion to that statement, and the hearing proceeded on an informal basis. Indeed, counsel for PDA acknowledged, during the course of the hearing, that he understood that it was an informal hearing and made no attempt to cross-examine any witnesses until near the end of the hearing when he was the one who did the cross-examining. Interestingly, he did so with the examiner's permission. We dismiss this argument as being totally without merit.

Next, Appellants contend that the Department's decision violates Section 34 of the Law, 71 P.S. §1710.-34,[3] because its findings were insufficient to support the decision. While our holding in *Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973), is applicable to this case as contended by Appellants, we have no difficulty in distinguishing the facts in *Begis* from the facts now before us. In *Begis* we held that where there were *no* findings of fact, *no* conclusions of law and *no* reasons for the action taken, the agency's decision was in clear violation of Section 34 of the Law. In the instant case the Commissioner's decision was incorporated in a two and one-half page letter. While the letter contains no findings in numerical order and no references to specific testimony, it does summarize each of the substantive objections presented by PDA and states in very specific language why those objections were rejected. The necessary "finding" implied in the letter is that the Commissioner found no basis for any of PDA's objections and therefore was compelled to approve the amendment. Again, we conclude that Appellants' argument is without merit.

---

[3] All adjudications shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.

Appellants' main disagreement with the approval of the amendment is substantive. They argue that the amendment violates the present law in that: (1) it repeatedly conflicts with, and violates the purpose and intent of, 40 Pa. C.S. §101 et seq.; (2) it subverts the legislative intent by refusing to differentiate between "low-income" and "over-income" patients; and (3) it violates Section 129 of The Dental Law (Act), Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §129, by purporting to authorize the unlicensed practice of dentistry. We will address these issues seriatim.

40 Pa. C.S. §6324(b) provides:

[A] professional health service corporation shall impose no restrictions on the health service doctors who administer to its subscribers, as to methods of diagnosis or treatment. The relation between a subscriber, or any of his dependents, and the health service doctor shall be identical with the relation that ordinarily exists in the community between a health service doctor and his patient. Subject to the provisions of subsection (a) of this section [relating to admission to plans], no person shall be permitted to interfere with the choice or selection by a patient of his health service doctor after that choice or selection has been made by an adult of sound mind.

Article III of the amendment provides that Blue Shield shall pay for certain services as set forth in the contract "provided they are deemed medically and dentally necessary by Blue Shield."

Appellants contend that the amendment infringes on the dentist's right to determine methods of diagnosis and treatment and that it somehow affects the dentists' relationship with their patients so that that relationship cannot be that which "ordinarily exists

in the community.'' Further, they contend that the proposed amendment will create doubt about a dentist's competency and honesty. We cannot agree. The amendment does not even pretend to mandate what treatment a dentist may prescribe for or provide to his patients. The sole determination that Blue Shield makes is whether or not it will *pay* for the treatment rendered. The basis for that determination is whether the services to be rendered are medically and dentally necessary in the judgment of the insurer. The Commissioner correctly noted in his decision that ''of course Blue Shield also has a continuing obligation to exert effective controls upon the cost of services to subscribers.'' We conclude that the restriction imposed by the amendment fulfills Blue Shield's obligation to its subscribers without infringing upon the professional obligations of any dentist to his patients.

Next, Appellants argue that Article IV of the amendment also violates 40 Pa. C.S. §6324(b) because it authorizes Blue Shield to require the submission of a treatment plan including ''substantiating material'', such as radiographs and study models, for a pre-determination of coverage by Blue Shield before services are rendered. Appellants complain that this provision imposes restrictions upon their rendition of services, affects the dentist-patient relationship and interferes with the patient's choice or selection of a dentist by creating doubt in the patient's mind about the dentist's competency or honesty or both. Again, we are hard-pressed to see how the amendment does any of these things. The amendment does not require treatment plans for all services. It does not mandate radiographs and study models for all treatment plans. The amendment merely authorizes such requests by Blue Shield. Most importantly, the amendment provides that where a dentist refuses to submit a treat-

ment plan or substantiating material when requested, Blue Shield "reserves the right" to determine what it will pay for the services "taking into account alternate procedures, services or courses of treatment, based on accepted standards of dental practice." Again, it seems clear to us that the dentist may do as he pleases with his patient—it is only the patient's (or the dentist's) right to payment for those services that is affected by the amendment.

Appellants complain that that portion of the amendment (Schedule II) which deals with prosthetics and crown, inlay and onlay restoration violates Section 6324(b) because its import is to require dentists to present satisfactory evidence that certain services are necessary. Again, the language does not say that no "unnecessary" services shall be rendered or that certain services shall be rendered only in certain circumstances. Rather, the amendment provides that if the requested evidence is not forthcoming, or if a more expensive procedure is used, the subscriber simply must bear the cost, rather than the insurer. It may be inconvenient or even burdensome for dentists to furnish the required evidence, but that is not equivalent to interference with the dentist-patient relationship.

Further, we note that Blue Shield is specifically authorized by 40 Pa. C.S. §6326 to require "such information as is reasonably necessary" to enable it to determine the amount to be paid by the insurer. We find nothing in the amendment which we can categorize as "unreasonable" or violative of any of the statutory provisions relating to the rendition of dental services.

Appellants contend that the amendment violates Sections 6303(b) and 6332(a), which mandate that professional health service corporations provide adequate professional services in accordance with the

best professional health service practice in the community. The Department is correct in asserting that the guidelines provided by the amendment were intended to aid Blue Shield in providing payment for only *adequate* services (as opposed to optimum services) based upon the best professional practice in the community. Nevertheless, Appellants feel that the requirement of radiographs upon request as embodied in Article IV, Paragraph E of the amendment is unduly harmful to subscribers. As we have previously noted, the reference to radiographs does not mandate *any* radiographs, much less excessive radiographs. If the authority given to Blue Shield in this respect, *i.e.*, requiring radiographs, is abused, neither patient nor dentist is without remedy. Clearly, Blue Shield must be provided with some basis for determining whether the services which it pays for are adequate and in keeping with the best professional practice in the community. The amendment provides Blue Shield with some additional methods of policing its services and thereby helping, not hindering, Blue Shield to obtain that objective.

Appellants contend that the amendment violates 40 Pa. C.S. §6325. This section distinguishes between "low-income" and "over-income" individuals. The purpose and intent of Section 6325 is to insure that adequate professional health services are available to "low-income" individuals. The insurer is required to pay only such amounts as it had previously contracted for with the dentist for over-income patients but must pay for low-income persons fees that insure adequate professional health services. Article VI of the amendment provides for the payment of usual, customary and reasonable (UCR) fees and prescribes the manner by which those fees shall be determined. While it is true that under the amendment the same fees will apply to low-income and over-income persons, the

amendment does not determine who is a "low-income" or "over-income" person, nor does it change the statutory intent of Sections 6303 and 6325 that persons of low-income shall be provided with adequate dental care and that over-income persons shall also be entitled to such services but that Blue Shield shall be responsible only to the extent of the UCR fee, thus permitting dentists to charge and collect higher fees or perform additional services for over-income persons. We conclude that the statutory mandated distinction between low-income and over-income patients is not disturbed by the amendment.

Finally, appellants argue that the amendment violates Section 10 of the Act, 63 P.S. §129, relating to the unauthorized practices of dentistry. Section 2 of the Act, 63 P.S. §121, defines "Practices of Dentistry."[4] Appellants complain that a clerical review of radiographs submitted to comply with Article IV(E) of the amendment constitutes "practice of dentistry." Appellants have not indicated to us, and we are unable to ascertain for ourselves, any aspect of the practice of dentistry as defined in Section 2 which is violated when a clerk makes the *first* review of radiographs to determine whether they satisfy Blue Shield standards.[5] Again, we conclude that Appellants' argument is without merit.

---

[4] A person engages in the 'Practice of Dentistry', within the meaning of this act, who diagnoses, treats, operates on, or prescribes for any disease, pain or injury, or regulates any deformity or physical condition, of the human teeth, jaws, or associated structures, or conducts a physical evaluation, or administers anesthetic agents, or who fits, constructs, and inserts any artificial appliance, plate, or denture for the human teeth or jaws, or who holds himself or herself out as being able or legally authorized to do so.

[5] The testimony is clear that if the clerk decides that the radiographs do not satisfy Blue Shield standards, they are then forwarded to a dental examiner for a final determination.

Having found that the Commissioner has not abused his discretion, that he has not exercised his authority in an arbitrary manner, that no constitutional rights of the Appellants have been abused, that the procedures outlined in the Law have not been violated and that there is substantial evidence to support the decision of the Commissioner, we affirm the Commissioner's order.

ORDER

AND Now, this 5th day of March, 1979, the order of the Insurance Department, dated July 19, 1977, approving Amendment No. 5 to Filing No. 5-H-1970, is hereby affirmed.