Canonsburg General Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health and Donald Reid, M.D., Acting Secretary of Health, Respondents.

Argued April 8, 1980, before President Judge
CRUMLISH and Judges WILKINSON, JR., MENCER, ROG-
ERS, CRAIG, MACPHAIL and WILLIAMS, JR. Judge BLATT
did not participate.

*John S. Hoff,* with him *Clara L. Mattern, Horty, Springer & Mattern,* for petitioner.

*Reed Hamilton,* Chief Counsel, with him *Stephen D. Thompkins,* and *D. Galton Cabot Moss,* Assistant Attorneys General, for respondents.

OPINION BY JUDGE CRAIG, May 6, 1980:

Canonsburg General Hospital (hospital) presented a petition for review in the nature of an action in mandamus against the Pennsylvania Department of Health (department) and its acting secretary, addressed to our original jurisdiction, seeking a peremptory judgment to mandate that the department certify to the United States Department of Health, Education and Welfare (HEW) that the hospital's application for federal capital reimbursement for a hospital replacement project (project) is in conformity with standards of community need and other factors.

The hospital's position has been based upon provisions of law, discussed below, which provide that an application shall be legally deemed to be in conformity if the department has failed to act upon it within 90 days after its submission in a completed status.

The department opposed the petition on the merits and also filed preliminary objections questioning the

propriety of the subject matter jurisdiction in mandamus. After a hearing before one judge of this court, in which only documentary evidence and affidavits were presented, the hearing judge issued a peremptory order in favor of the hospital. The department thereafter filed its petition to open the peremptory judgment, which is now before the court en banc for disposition.

Throughout the proceedings, the case has involved two major issues, which we state at the outset.

## The Basic Issues Stated

1. Is an action in mandamus appropriate to compel a certification to the federal government, by the designated state agency, that a hospital's application for capital project funding has been determined to be in conformity, under federal and state regulations which both provide that failure of the state agency to approve or disapprove within ninety days after receipt of the application "shall have the effect of a determination" of conformity?

2. Can the state agency seek to require "research efforts" of the hospital, in addition to existing information given by the hospital in answering the questions on the application, so that the starting date for the ninety-day consideration of the application is postponed until completion of the "research efforts"?

Concerning the above second question, it is significant that the department, in its statement of the questions involved, has itself straightforwardly used the characterization "research efforts" to describe what the state agency was demanding before the application could be approved or disapproved.

## The Background of The Case

We must first review the law which establishes the legal premise for our consideration.

*The Governing Statutes and Regulations*

Section 1122 of the Social Security Act, 42 U.S.C. §1320a-1, establishes a federal system to reimburse health care facilities for capital project costs by permitting such capital expenditures to be included within Medicare and Medicaid payments subsequently made to the health care facility. To avoid supporting unnecessary capital expenditures, the procedure is integrated with the comprehensive health planning structure created under the National Health Planning and Resources Development Act, 42 U.S.C. §300k *et seq.,* whereby health needs within a region are assessed by a health systems agency, such as the Health Systems Agency of Southwestern Pennsylvania, Inc. (HSA), which acted as agent for the department here.

The HSA makes the initial assessment of a hospital's application for a capital project and then submits its recommendation to the department, which serves as the designated planning agency (DPA) for Pennsylvania by contract with HEW. Implementing Section 1122, 42 C.F.R. §100.107 (1979) requires both the HSA and the DPA to consider whether a proposed project is in conformity with community needs and standards with respect to adequate staffing, cost containment and economic feasibility.

The department's certification of conformity or nonconformity is a recommendation to HEW, and the Secretary of HEW makes the final decision in accordance with 42 C.F.R. §100.108 (1979), as authorized by Section 1122.

The crucial implementing regulation here is 42 C.F.R. §100.106 (1979). Under 42 C.F.R. §100.106(a) (2) (1979) the proposal application must "be submitted in such form and manner and . . . contain such information" as the DPA requires to meet the needs of all agencies involved.

Section 1122 of the statute clearly requires the state DPA to make its notification of conformity or nonconformity "within a reasonable period" after receiving the application. That time factor requirement is specifically implemented by 42 C.F.R. §100.106(a) (3) and (4) (1979),[1] subsections which can be summarized as follows:

Subsection (3) refers to the application as a "notice". It requires the DPA, if the notice is incomplete, to notify the applicant "within 15 days of its receipt of such incomplete notice," advising as to the additional information required. "Where such timely noti-

---

[1] The full text of the subsections is as follows:

(3) If the notice under this paragraph is found by the designated planning agency to be incomplete, such agency shall notify the person proposing the capital expenditure within 15 days of its receipt of such incomplete notice, advising such person of the additional information required. Where such timely notification of incompleteness is provided, the period within which the agency is required to notify the person proposing such expenditure that such expenditure is not approved, as required by section 1122 (d)(1)(B)(i) of the Act and paragraph (a)(4) of this section, shall run from the date of receipt by the agency of a notice containing such additional information.

(4) Except as provided in paragraph (a)(3) of this section, the designated planning agency shall, prior to the date set out in the written notice of intention submitted pursuant to paragraph (a)(1) of this section as the expected date for the obligation of the proposed expenditure (but, subject to the provisions of paragraph (a)(3) of this section in no event later than 90 days after the receipt of such notice unless the person proposing the capital expenditure agrees to a longer period), provide written notification to the person proposing such capital expenditure (i) that such capital expenditure has been determined by such agency to be in conformity with the standards, criteria and plans described in §100.104(a)(2); or (ii) that such agency has elected not to review the proposed capital expenditure (which election shall be equivalent to a determi-

162

fication of incompleteness is provided," the ninety-day time limitation governing the DPA under Subsection (4) "shall run from the date of receipt by the agency of a notice containing such additional information."

Subsection (4) prescribes that the failure of the DPA to provide notification of conformity or nonconformity within "90 days after the receipt of such notice . . . shall have the effect of a determination" of conformity.

The parties do not differ with respect to the meaning and effect of those subsections, as summarized.

The parties also agree that the responsibilities of the department, as DPA, for thus reviewing the appli-

nation by such agency that such expenditure is in conformity with such standards, criteria, and plans), in which event the designated planning agency shall notify the Secretary of its reasons for electing not to review the proposed capital expenditure; or (iii) that such agency after having consulted with, and taken into consideration the findings and recommendations of, the other agencies described in §100.105 (to the extent that such proposed capital expenditure is within the respective fields of responsibility of such other agencies), has determined that the proposed capital expenditure would not be in conformity with the standards, criteria, or plans described in §100.104(a)(2). The failure of the designated planning agency to provide any such notification within the time limitations set forth above shall have the effect of a determination described in paragraph (a)(4)(i) of this section. The notification described in paragraph (a)(4)(iii) of this section shall be accompanied by a statement of the designated planning agency's proposed recommendation to the Secretary and the reasons therefor, a summary of the findings and recommendations of the other agencies with which such agency has consulted pursuant to paragraph (a)(4)(iii) of this section and shall provide an opportunity for a fair hearing with respect to the findings and recommendations of the designated planning agency at the request of the person proposing such capital expenditure.

cation notices have been delegated to the HSA, so that the actions of the HSA can be considered as actions of the department.

## General History

On April 16, 1979, the HSA received from the hospital its application for capital reimbursement to replace its present 108-bed facility with a 100-bed facility, at a cost of approximately $17,000,000. By letter of April 30, 1979, the HSA advised the hospital that the application was incomplete. The hospital, under date of May 22, submitted additional information, which the HSA received May 30, 1979. Thereafter, commencing with an additional request from the HSA on June 6, there followed considerable correspondence, which will be analyzed in detail below, in considering the merits.

In this proceeding, the hospital's position is that the ninety-day period began running with the HSA's receipt of additional information, as early as May 30 but not later than July, so that the deadline would have expired not later than October 31. Because neither the HSA nor the DPA have yet made any determination of conformity or nonconformity, the hospital claims approval by operation of law.

## Preliminary Objections

As originally filed, the department's preliminary objection included: (1) the position that this court has no jurisdiction because the Pennsylvania Department of Health here has been acting "as a federal agency," and (2) the objection that HEW and the HSA were not joined as parties alleged to be necessary. The hearing judge denied those objections—the first upon the basis that the state health department unquestionably has remained an agency of the Commonwealth

government subject to our jurisdiction,[2] and the second objection on the basis that no relief has been sought, or is needed, against HEW or the HSA[3]—and those objections have not been renewed by the department.

---

[2] The hearing judge's reasons for denying the first objection were stated as follows: The department's claim that this court lacks jurisdiction because an executive department of the Commonwealth of Pennsylvania is acting "as a federal agency" is unusual, to say the least. There is no doubt that the department remains an agency of "the Commonwealth government" and therefore within our clear original jurisdiction under 42 Pa. C.S. §761(a)(1) with respect to suits against it. The department acknowledges that it serves as DPA by "contract with HEW," a fact which in itself tends to show that the department retains its identity as a state agency and has not been "nationalized" in any sense. On this point, we must reject the only authority offered by the department, consisting of a hearsay kind of precedent, derived from a federal district court opinion's mention that some Indiana trial court had considered Indiana's Department of Health not subject to state court jurisdiction when acting as a DPA under Section 1122. *Lakeside Mercy Hospital v. Indiana State Board of Health*, 421 F. Supp. 193, 198 (N.D. Ind. 1976), *aff'd.* 547 F.2d 1170 (7th Cir. 1976).

[3] The reasons for denial of the non-joinder objection were as follows: With respect to the joinder of HEW and the HSA as necessary parties, we agree that, if any such defect existed, it would be jurisdictional, *County of Allegheny v. Department of Public Welfare*, 31 Pa. Commonwealth Ct. 379, 376 A.2d 290 (1975), and that a party is indispensable where its rights are so intertwined with the claims at bar that no relief can be granted without impairing such rights. *Powell v. Shepard*, 381 Pa. 405, 113 A.2d 261 (1955). Accordingly, HEW is not an indispensable party because the relief sought is that this court declare and command the state agency to make a certification which the department's brief itself characterizes as a recommendation to HEW, with HEW admittedly not being bound thereby but having the power of final decision. Although the claim is based upon federal law as the law of the land for the subject matter, the issue turns on how that law governs the state agency, not the federal one.

Similarly, with respect to the necessity of joining the HSA as a party, no relief is sought against the HSA, which, according to the

THE BASIC ISSUES CONSIDERED AS TO FACTS AND LAW

With its petition to open, the department continues to raise the two questions first stated above at the outset, which constitute the remaining questions originally raised on preliminary objections.

### Question 1.  Is Mandamus Appropriate?

The department first questions the appropriateness of mandamus on the ground that an adequate administrative remedy is available and has not been used, citing *Kerr v. Department of State,* 35 Pa. Commonwealth Ct. 330, 385 A.2d 1038 (1978). One administrative remedy indicated by the department is the hospital's right to a fair hearing under 42 U.S.C. §1320a-1(d)(1)(B)(ii)(II) and 42 C.F.R. §100.106(c) (1979) upon "disapproval of an application by the DPA." Accepting that characterization by the department of the administrative remedy, it is plainly not available because the precise point here is that there has been no disapproval of an application by the DPA. For the same reason *Kerr, supra,* is inappropriate because in that case the Pennsylvania Department of State had clearly denied the application by issuing a written refusal to register the requested corporation name.

Our decisions have held that, even within a statutory framework providing extensive administrative procedures for adjudication of the merits, mandamus (including peremptory judgment in mandamus) is a

---

contract submitted by the department, simply functions as a. contractor to carry out services which the department has delegated to it. Merely to say, as the department does, that the "rights and responsibilities" of the HSA are "questioned and jeopardized" does not indicate how any rights of the HSA would be at all affected by an order that the department do that which the law requires the department to do.

proper remedy for implementing an approval deemed by law to issue when inaction has transcended a time limitation—*e.g.,* deemed aprovals of land development projects under the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* §§508, 908(9), 53 P.S. §§10508, 10908(9), providing for deemed aproval after the expiration of ninety-day and forty-five-day periods respectively. *Foltz v. Monroeville,* 5 Pa. Commonwealth Ct. 304, 290 A.2d 269 (1972). The purpose of such a time limit, as declared by the Pennsylvania Supreme Court, is equally applicable here—to eliminate the delays and losses which can ensue from bureaucratic procrastination in a governmental planning process. *See Garchinsky v. Clifton Heights Borough,* 437 Pa. 312, 263 A.2d 467 (1970); *Humble Oil and Refining Co. v. East Lansdowne Borough,* 424 Pa. 309, 314, 227 A.2d 664, 666 (1967).

Our recent decision in *Lindy Homes, Inc. v. Sabatini,* 42 Pa. Commonwealth Ct. 600, 401 A.2d 589 (1979), does not disturb the precedent of the deemed approval cases such as *Garchinsky* and *Foltz, supra,* because *Lindy Homes* did not involve implementation of a law providing for automatic approval after the expiration of a stated time period.

Moreover, the department's reference to *Kerr, supra,* as authority for the availability of the remedy under the Administrative Agency Law, 2 Pa. C.S. §101 *et seq.* and the General Rules of Administrative Practice and Procedure, 1 Pa. Code §31.1-35.9 is negated by the department's own argument that:

If the Hospital received a determination from Department with which it disagreed, it would have had an appealable decision under the Administrative Agency Law, and could have sought judicial review of the Department's decision.

Thus, because the hospital did *not* receive *any* determination from the state agencies, the hospital had no appealable decision and was left only with the automatic approval by operation of law.

The department also questions the appropriateness of mandamus upon the correct premise that (1) the duty sought to be enforced must be ministerial, *Tanenbaum v. D'Ascenzo*, 356 Pa. 260, 51 A.2d 757 (1947) and (2) that the right of the petitioner must be clear. *Francis v. Corleto*, 418 Pa. 417, 211 A.2d 503 (1965); Pa. R.C.P. 1098.

We cannot agree that the action here sought is a discretionary one. Although the department, under the applicable regulations, clearly has the discretion to reach a determination on the merits, when it fails to do so within the time limit, the issuance of the deemed favorable determination is automatic.

Therefore, as noted above, the relief sought here—to compel communication or certification of the occurrence of that automatic determination to HEW—is plainly ministerial.

Initially as to this point, we have been afforded an illustration of the routine nature of the matter of compelling a deemed approval by an action within the department itself, *In the Matter of Pottstown Memorial Medical Center's Appeal*, where, as to Project No. 603-74-A-1913, by an unpublished order of February 27, 1979, a hearing officer of the department ordered precisely the kind of relief which is requested here, by deciding that the department's failure to issue notice of nonconformity within the ninety-day review period has the effect of a "determination that the proposed capital expenditure is in conformity." The departmental order directed that the secretary certify the Pottstown Memorial Medical Center application to HEW as an approved project.

The department misstates the central question by asking, "Is a determination of completeness of an application a function which is discretionary rather than ministerial?"

As the decisions above establish, it is *the duty sought to be enforced*—that is, the action sought to be mandated by way of relief—which must be ministerial. The hospital has not asked this court to command the state agency to make a determination as to the completeness of the application. It is the department which urges that we should confine our order simply to requiring that the ninety-day review cycle begin, rather than to finding the ninety-day review cycle to have elapsed and ordering the department to grant an automatic approval of the application. But the latter is precisely what the regulations call for us to do in the light of the relief actually requested. Again, *Humble Oil and Refining Co.* and *Garchinsky, supra,* provide the parallel for us to follow rather than the situation in *Suburban Group, Inc. v. Gittings,* 22 Pa. Commonwealth Ct. 295, 348 A.2d 490 (1975) where we held mandamus inappropriate to compel approval of the subdivision of land for "agricultural purposes"; determination of the future use of land obviously involves a divination of intention, quite different from certification of an automatic approval which has occurred for failure to perform the equally clear-cut duty of approving or disapproving within the stated time limit.

The question persists: If an application is unsatisfactory in any way, why cannot the HSA, as agent for the state, simply issue notice of disapproval at sometime within a period of three months?

*Styers v. Wade,* 30 Pa. Commonwealth Ct. 38, 372 A.2d 1236 (1977) is inapposite because it dealt with a law which contained no requirement that a hearing be

convened, but only a requirement that a decision be issued, which was done in that case.

Although we agree that mandamus does not lie to compel a revision of a decision by an administrative body, *Raffel v. Pittsburgh,* 340 Pa. 243, 16 A.2d 392 (1940), *South Whitehall Township v. Department of Transportation,* 11 Pa. Commonwealth Ct. 558, 316 A.2d 104 (1974), the present case involves, not a decision to be revised, but a decision not made.

*Delaware River Joint Toll Bridge Commission v. Resor,* 273 F. Supp. 215 (E.D. Pa. 1967) correctly rejected mandamus to compel the issuance of a discretionary approval, as distinguished from enforcement of a law which requires the making of a decision one way or another, within the stated time.

When there is a duty to make some decision, mandamus may be used to compel making of the decision, and, as authorized by the cases which we follow, may be used to compel the nondiscretionary legal result of failure to make the decision.

*2.  Can "research efforts" be required so as to postpone starting of the period for review of the application?*

Thus the only remaining question is whether the right to an automatic approval is clear under the law and facts in this case, and that question turns upon the issue of whether the starting date for the ninety-day period can be postponed by a demand for "research efforts".

### The Facts

Upon the record presented, the facts are clear and not in dispute. Almost the entire record is embodied in documents and correspondence, the authenticity of which is not disputed. Although the affidavits recite some individual interpretations of what was intended

to be expressed in conversations and conferences, those conferences—as will be noted below—were in every instance followed by specific written correspondence, in which the representatives of the hospital and the agencies wisely clarified in writing their positions for the record.

Essentially, a series of documents make up the record. Listing each item by date of document, followed by the date of receipt if different, the chronology is as follows:

April 11, April 16—Hospital's application (notice) submitted to HSA, as agent for department;

April 30, May 1—HSA request to hospital for more information on the planning process, program description, financial information and community needs, including, *inter alia,* projection of needs, alternatives, and coordination with existing or planned facilities;

May 22, May 30—Hospital response submitted to HSA;

June 6, June 7—HSA request to hospital for "further information or clarification on the information" with respect to organized planning process, community need, projection of need and documentation (*e.g.,* feasibility study results) with respect to alternatives, conformity with guidelines, agreements with neighboring facilities; also requested was additional information on conformity with local codes and financial data;

July 13, July 16—Hospital response submitted to HSA;

July 13—Hospital letter to department secretary, protesting against "any additional administrative delay" as unwarranted, that it is inappropriate for HSA to delay "as a means of stimulating the joint planning activity" and asking that the proposal be "deemed complete and entered into the formal review process" at the earliest possible date;

July 13—Hospital letter to department, forwarding a copy of the hospital's July 13 response to HSA and also requesting commencement of formal review process "at the earliest possible date";

July 27—HSA letter to hospital, stating that the additional information of July 16 "satisfies most of the outstanding information requirements but adding," "the main item of incompleteness is the lack of exploration of alternatives to the project," and hoping that the hospital and Washington Hospital would explore alternatives by August 1 to permit review to commence November, 1979;

August 1, August 2—Hospital letter to HSA, submitting report on previous exploration of alternatives with Washington Hospital and declaring the same to be a "process for years to come", again asking for entry into the next review cycle;

August 10, August 15—HSA letter to hospital, stating that the information submitted August 1 describes the beginning of the planning process, but proposal is incomplete until documentation is provided as to "exploration of alternatives;"

August 14—Hospital letter to HSA reviewing claimed agreement made at August 7 conference, stating that hospital agrees to explore alternatives and participate in a financial study by Kidder Peabody "with the understanding the Canonsburg General Hospital proposal will be admitted to the review process on October 1," also hoping that study will be completed before October 1, "but it is our understanding, in any event, Canonsburg General Hospital will be free to have its proposal entered into the review process without further questions from the HSA on the October 1, 1979 date;"

August 21—Hospital letter to HSA, adding details as to definition of Kidder Peabody study;

August 30—HSA letter to hospital stating position of HSA that proposal *"will not be considered complete until alternatives to the project have been explored"* (emphasis in original);

September 5—Hospital letter to HSA, restating hospital understanding of the claimed agreement as in letter of August 14;

September 7—HSA letter to hospital referring to the Kidder Peabody study and the intention of exploring alternatives: "The results of the study should provide you with the necessary information that can document the HSA information requirement of exploration of alternatives. Once the information can be attained . . . your proposal will then be determined complete. The proposal cannot be determined complete until . . . the results of the coordinated planning process are available."

October 5—Hospital legal counsel letter to department secretary stating claim of deemed approval as of August 21 but in no event later than August 28.

November 16—Department legal counsel letter to hospital legal counsel, disputing deemed approval on basis that application was not complete and that law allows several requests for supplementation of the application.

The first question to be answered from this chronology is raised by the department's assertion that we must conclude that the hospital not only agreed to a financial study by Kidder Peabody, but also agreed that the application would not be considered complete until receipt of that study.

The record clearly refutes that claim. The hospital letters of August 14 and September 5 plainly do not consent to any such delay. The August 21 letter, from the hospital administrator to the HSA assistant director, is clearly a working exchange between administrators concerning study implementation details and

is bracketed by the earlier August 14 letter and the later September 5 letter (both from the hospital president to the HSA chairman), which clearly negate any agreement on the part of the hospital to delay the commencement of review while awaiting completion of the new study.

Therefore, the record discloses that there was no agreement by the hospital to a "longer period" extending the ninety-day limit provided by 42 C.F.R. §100.106(a)(4) (1979).

Accordingly, we move to the question of whether, under 42 C.F.R. §100.106(a) (1979), there may be more than one fifteen-day period within which an agency may demand additional information, so as to postpone and re-start the ninety-day period.

We note that the department itself has interpreted its own restatement of the federal regulations, as set forth in 28 Pa. Code §401.6(a)(3), as follows:

> Section 401.6(a)(3) allows the HSA to make only one request for additional information, although the HSA can always ask for clarification of the information it has already received.

9 Pa. B. 3563 (1979).[4]

Hence, we must ask if the HSA requests after May, 1979, were seeking new information or just clarification. That issue focuses upon the HSA demands for conduct of a financial study by Kidder Peabody as consultant and the pursuance of a process of exploring alternatives. Because the department has admitted that material is to be obtained in the future *by research*, it cannot be mere clarification but must necessarily be additional information. Hence, following the

---

[4] This departmental comment, although issued shortly after the ninety-day period in this case, is neverthless quite illuminating as the department's own administrative interpretation of the regulation, which itself had been in effect throughout the period.

department's own administrative interpretation, study demands cannot re-start the review period.

The crux of the dispute here is whether an application may be deemed incomplete because of the lack, not of information in existence, but of information yet to be derived through research, study and negotiation. The department's present position is therefore not supported by its previous interpretation, viewing the regulations as allowing only one request when information (whether existing or new) is sought, as distinguished from clarification of information already in hand.

Indeed, the above-quoted departmental interpretation is in accordance with the only pertinent court decision which has been presented, *Nebraska Methodist Hospital v. Casari,* F. Supp. (D. Neb. 1978), published only in CCH Medicare and Medicaid Guide ¶29,205 (1978). In that case, where the public agencies were defendants, the court interpreted the same regulation 42 C.F.R. §100.106(a)(3) (1979), as follows:

> The defendants claim that they should be allowed to ask an indefinite string of questions, as long as the later questions are asked within fifteen days of the receipt of answers to prior questions....

> The most reasonable interpretation is that there is only one fifteen-day period in which the designated planning agency may point to areas of incompleteness in the application. Counsel for the defendants argues that that may have been the intended interpretation by the maker of the regulation at one time but should no longer be, because of the difficulties attending the review of complex applications. The remedy for dealing with these complexities lies in persuading

the Secretary that the regulation should be changed, rather than in an alteration of the regulation by judicial interpretation. . . .

The federal court, finding that the ninety-day period had expired, mandated approval of the application. A Florida decision has also ordered a deemed approval as a result of inaction within the ninety-day period. *Samson v. Department of Health and Rehabilitative Services,* Fla. , 363 So.2d 412 (Fla. App. 1978). The department offers no opposing authority.

If we therefore apply the view of the federal district court and the department itself, that there is only one 15-day interval for requesting additional information, examination of the April 30 request made by the HSA (the only one during that period) discloses that information concerning the exploration of alternatives with neighboring institutions was requested; the HSA proposal of, and request for, the Kidder Peabody study was not brought up until August. Significantly, the July 27 letter of the HSA acknowledged that all existing additional information, as requested April 30 and June 6, had been supplied by July 13; only the "exploration of alternatives" then remained. However, even if the HSA may request an exploration for information as yet not in hand, such a demand should not be permitted to postpone the running of the ninety-day period until the completion of a research study which could require many months or even years.

We have noted above that the department itself, in stating the pivotal question which we must consider, has characterized what HSA was asking for as "research efforts." As the department's own brief states them, the key questions in the application were:

1. What alternatives were considered?

2. Why was this particular program selected?

3. How does this proposal relate to available state and local criteria?

We note that the first two questions above, as posed by the state agencies themselves, are in the past tense, thus calling for information which has come into existence.

Even when the state agencies pose the third question above—how does this proposal relate to available state and local criteria—it speaks in the present tense, and in no way suggests that an applicant must undertake research efforts and do long-term studies in order to fill out the application.

To permit postponement of the trigger date until the completion of long-term research studies would make the ninety-day review period meaningless any time an agency chose to defer its responsibility for decision by calling for research into the future. Certainly the reviewing agency is not barred from a timely finding that an application is not in conformity because needed research has not been undertaken and completed. Where such a rejection is issued in time, the agency has not procrastinated, and the applicant is sent back to the drawing board to lay the groundwork.

### CONCLUSIONS

Therefore, the facts, the legal provisions and the conclusions are clear. The hospital submitted its application as of April 16, 1979. The HSA made a timely request for information as of April 30 and, after receiving a May 30 response, made a request for clarification June 6. After the hospital responded July 13, the HSA acknowledged that the response was complete except with respect to exploration yet to be performed. Because such a demand for long-term research could not postpone the starting date further, and because the July 13 response was received July 16,

the latter date commenced the ninety-day period which therefore expired October 14, 1979, at which time the department had not yet made a determination as. to conformity or nonconformity.

(Although the hospital letters of August 14 and September 5 could arguably be viewed as an *offer* to extend the starting date to not later than October 1, the department did not accept the offer and here understandably raises no such issue, insisting, as it does, that the review period never started at any date. We will not supply an issue which the department itself has not raised but will confine ourselves to the issues presented.)

We therefore conclude that the undisputed documentary evidence and record shows that the hospital's right to relief is clear under the applicable provisions of law. Because the hospital is entitled to the judgment in mandamus as requested and heretofore granted in peremptory form, the department's petition to open the peremptory judgment will be denied and final judgment entered.

## ORDER

Now, this 6th day of May, 1980, respondent's petition to open peremptory judgment is dismissed and, with respect to Project No. 608-78-H-2557, of Canonsburg General Hospital, final judgment is entered as follows:

(1) Timely notification of conformity or nonformity under 42 C.F.R. §100.106(a) (1979) has not been given, and such failure has the effect of a determination, under 42 C.F.R. §100.106(a)(4) (1979), that such project application (notice) has been determined to be in conformity with the standards, criteria and plans prescribed by law; and

(2) Respondents are commanded forthwith to certify to the Secretary of the United States Depart-

ment of Health, Education and Welfare notice that, under 42 C.F.R. §100.106(a)(4) (1979), there is in effect a determination that Canonsburg General Hospital's Project No. 608-78-H-2557 application (notice) is in conformity with the standards, plans and criteria prescribed by Section 1122 of The Social Security Act, along with such other laws and regulations as are pertinent.