Nathan D. Apple, D.D.S. et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Insurance and Pennsylvania Dental Service Corporation t/d/b/a Delta Dental of Pennsylvania, Respondents.

Argued April 8, 1981, before President Judge CRUMLISH and Judges BLATT and MACPHAIL, sitting as a panel of three.

*Thomas A. Beckley,* with him *Bradley S. Gelder, Beckley & Madden,* for petitioners.

*David T. Kluz,* Assistant Attorney General, with him *Albert J. Strohecker, III,* Assistant Attorney General, and *Harvey Bartle, III,* Acting Attorney General, for respondent, Commonwealth of Pennsylvania, Department of Insurance.

*James H. Stewart, Jr.*, with him *Spencer G. Nauman, Jr., Nauman, Smith, Shissler & Hall*, for respondent, Delta Dental of Pennsylvania.

OPINION BY PRESIDENT JUDGE CRUMLISH, July 13, 1981:

This appeal by ten Pennsylvania dentists, the Pennsylvania Dental Association (DPA), and two of its employees is rooted in an Insurance Commission order dismissing their complaint against the Pennsylvania Dental Service Corporation, a/k/a Delta Dental Association of Pennsylvania (Delta). It held that they lacked standing to litigate alleged violations of the Professional Health Services Plan Corporations Act (PHSPCA) and the Unfair Insurance Practices Act (UIPA).[1] We affirm.

Delta operates a certified non-profit dental service plan designed to provide dental care to low-income persons or their dependents without sacrificing the necessities of life. 40 Pa. C. S. §6303. The licensed practicing dentists have no contractual relationship with Delta as qualified dental care providers. Rather, they are classified as "non-participating" dentists who perform dental services for patients holding Delta dental coverage but do not receive payment from Delta for their services. Instead, payment is made directly by Delta to the patients who in turn must pay their non-participating dentists. On the other hand, "participating" dentists have a contractual arrangement with Delta through which they receive direct payment.

---

[1] The Professional Health Services Plan Corporations Act (PHSPCA), Act of November 15, 1972, P.L. 1063, *as amended*, 40 Pa. C. S. §6301, seeks to insure adequate professional health services for low-income persons while the Unfair Insurance Practices Act (UIPA), Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §1171.1, attempts to regulate unfair and deceptive trade practices in the insurance business.

On August 22, 1977, Delta initiated a new payment policy for non-participating dentists, by which coverage is limited to 88% of the customary and reasonable charge for services rendered to participating dentists as distinguished from 100% reimbursement. Delta then publicized this new payment policy and identified "participating" dentists to its subscriber groups. Although implemented, this "two-tier" payment system was not approved by the Insurance Department.[2] After initial disapproval, Delta resubmitted a proposal to the Insurance Department allowing for a "two-tier" plan designed to reimburse non-participating dentists at the rate of 88% of the usual, customary and reasonable rate. Delta was informally advised that the Department would not approve the proposal as filed, but continued payment on this basis.

On December 19, 1978, a group of these non-participating dentists filed a complaint with the Department claiming that the 12% payment differential was prohibited by statute. On February 20, 1979, Delta responded with an answer and a motion to dismiss, raising lack of standing and failure to state a cause of action upon which relief could be granted.

Following negotiations between Delta and the Department, a consent order was entered on May 11, 1979, whereby the 100% payment plan was approved and the 88% "two-tier" plan was withdrawn from Department consideration. However, the Department did permit existing service contracts to remain in effect for one year or their anniversary date, whichever came sooner, and imposed a $500 civil penalty.

On August 27, 1979, Pennsylvania Dental Association and two of its employees petitioned to intervene.

---

[2] PHSPCA Section 6329, requires Department approval before rates, forms and methods of payment to health service doctors can become effective. 40 Pa. C. S. §6329(a).

On January 16, 1980, a Hearing Examiner at pre-hearing conference limited argument to the status of the proposed intervenors. Motions to Dismiss were also considered. On May 6, 1980, the Insurance Commissioner denied the proposed intervention and granted Delta's motion to dismiss for lack of standing and mootness; hence, this appeal by complainants and intervenors.

Petitioner-dentists argue that their standing to litigate at the Insurance Department[3] is demonstrated by the General Rules of Administrative Practice and Procedure, which purportedly allow all persons to file complaints with an administrative agency.[4] We reject this assertion.

The dentists do not have a *right* to pursue a complaint at the Insurance Department. The clear word-

---

[3] They allege jurisdiction through the Department's administration of (1) PHSPCA, including interference with subscriber payments, 40 Pa. C. S. §6325, the dentists' method of diagnosis and treatment and the subscribers' selection of a dentist, 40 Pa. C. S. §6324, and failure to secure Department approval prior to placing the two-tier reimbursement system into effect, and (2) UIPA, including unfair discrimination between individuals of the same class, 40 P.S. §1171.5(a)(7)(ii).

[4] Section 35.9 of the General Rules of Administrative Practice and Procedure provides that:

Any person complaining of anything done or omitted to be done by any person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency. . . . *If, in the judgment of the agency,* a violation of a statute or regulation administered or issued by the agency has been alleged and has not been satisfied adequately, *the agency will either invite the parties to an informal conference,* set the matter for a formal hearing, *or take any other action which in the judgment of the agency is appropriate.* In the event that a hearing is held the complainant automatically shall be a party thereto and need not file a petition for leave to intervene. (Emphasis added.)
1 Pa. Code 35.9.

ing of the regulation grants an agency the discretionary power to not only review the complaint to determine violations but to determine the modus operandi. 1 Pa. Code §35.9. The Department may permit third parties to proceed, but only "aggrieved persons" are entitled to judicial review of such proceedings. *Delaware County Community College v. Fox,* 20 Pa. Commonwealth Ct. 335, 342 A.2d 468 (1975). Here, the question is one of standing and we may only determine whether there has been either an abuse of discretion or a purely arbitrary exercise of authority. *Slanina v. Sheppard,* 27 Pa. Commonwealth Ct. 376, 366 A.2d 963 (1976).

The basic principles of standing require an "adversely affected" or "aggrieved" party to have an interest in the subject matter or particular question litigated which is substantial, immediate, and direct. *Strasburg Associates v. Newlin Township,* 52 Pa. Commonwealth Ct. 514, 415 A.2d 1014 (1980). Although the interest must be "substantial" in its individual adverse effect and "immediate" in terms of the nature and proximity of the action, the harm caused by the aggrieved person must be "direct." *See William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). In this controversy, standing only can be based upon the alleged PHSPCA and UIPA violations. Although this jurisdiction rests with the Department, each of the provisions seeks to protect the subscriber-patient, except for PHSPCA Section 6324(b), 40 Pa. C. S. §6324(b), which prohibits restrictions on doctors' diagnosis or treatment and interference with the subscriber's choice or selection of a doctor after the choice or selection is made. Clearly, the proposed two-tier payment system neither restricts nor interferes with petitioners' practice or the subscribers' interests. In *Pennsylvania Dental Association v. Insurance Department,* 41 Pa. Common-

wealth Ct. 47, 398 A.2d 729 (1979), this Court rejected a similar argument based on a finding that the service contract merely granted Blue Shield the authority to determine whether services were "medically and dentally necessary" and to be payable. In addition, we have found no legal or contractual relationship between the dentists and Delta or their patients, as subscribers or otherwise, by which they could assert patients' rights. We must conclude that they have failed to show a basis for standing.[5]

The Pennsylvania Dental Association and two of its employees claim possession of the requisite standing as "consumers" and "customers" of Delta,[6] while PDA also asserts its representative capacity on behalf of "participating" *and* "non-participating" dentists in the Commonwealth. We cannot agree.

Although PDA contracted with Delta for dental services for its employees and can raise certain issues

---

[5] In so holding, we make no determination of whether substantive PHSPCA or UIPA violations have occurred, but merely rule on the standing of the parties.

[6] Section 35.28 of the General Rules of Administrative Practice and Procedure provides that:

> A petition to intervene may be filed by any person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. Such right or interest may be:
>
> . . . .
>
> [2] An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have such an interest: *consumers, customers, or other patrons served by the applicant or respondent* . . . .
>
> [3] *Any other interest of such nature that the participation of the petitioner may be in the public interest.* (Emphasis added.)

1 Pa. Code §35.28.

on behalf of its membership, the alleged harm is registered against its non-participating members. PDA's standing clearly may rise no higher than its complainant, non-participating members. *Delaware Valley Apartment House Owners' Association v. Department of Revenue,* 36 Pa. Commonwealth Ct. 615, 389 A.2d 234 (1978). *Compare Pennsylvania Dental Association v. Insurance Department,* where PDA contested a comprehensive prepaid dental program by Pennsylvania Blue Shield for dental insurance payments to subscribers and participating dentists. There, as here, participating dentists were paid directly by the plan and therefore alterations in the dental service contracts directly affect subscribers and dentists alike. However, as we have so concluded, non-participating dentists have no legal stake in the action, and DPA's attempt to intervene must fail for lack of standing.

Turning to the individual employee's standing as Executive Director and lobbyist for PDA, the Petition to Intervene fails to plead or fairly infer diagnosis or treatment by non-participating dentists during the time the "two-tier" system was in effect. Since no facts were pleaded to support an injury suffered under the dental service contract, we must conclude that standing was lacking and therefore the petition to intervene was properly denied.[7]

Accordingly, we affirm the Insurance Commissioner's decision granting the Motion to Dismiss and denying the Petition to Intervene.

---

[7] The Insurance Commissioner alternatively concluded that issues raised in response to allegations of substantive PHSPCA and UIPA violations were moot. Since disposition of this matter has been made on the standing issues, we need not determine whether the May 11, 1979 consent agreement and order eliminating the "two-tier" plan from Department consideration and from operation within one year renders the entire matter moot.

### ORDER

The Insurance Commissioner's adjudication and order, dated May 6, 1980, is affirmed.