930 F.2d 334
 59 USLW 2662, 1991-1 Trade Cases 69,409
 Ralph J. MILLER, M.D., Appellant,
v.
INDIANA HOSPITAL, a corporation; Henry F. Hild; Donald F.
Smith; William R. McMillen; John S. Simpson; Thomas S.
Barbor; Samuel W. Jack, Jr.; Mrs. C. Fred Hildebrand;
Mrs. Wanda M. Weyandt; Harry C. McCreary; C. Wilmer
Johnston; George M. Evans; Donald S. Brody; Roger J.
Reschini; Joseph Kovalchick; William G. Evans, M.D.;
Melvin C. Williams, M.D.; Robert G. Goldstrohm, M.D.;
David C. Hughes, M.D.; Ralph F. Waldo, M.D.; Herbert L.
Hanna, M.D.; Richard N. Freda, M.D.; Frank Weiner, M.D.;
Henry Mitchell, M.D.; Ralph R. Brown, M.D.; Commonwealth
of Pennsylvania, Department of Health; H. Arnold Muller,
M.D., Appellees.
 No. 90-3331.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 5, 1990.
Decided April 19, 1991.
 
 J. Bradley Kearns (argued), Evans, Ivory, Moses, Hollander & MacVay, Pittsburgh, Pa., for appellant.
 Larry A. Silverman, (argued), Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellees.
 Before SLOVITER, Chief Judge,* SCIRICA and ALITO, Circuit Judges.
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 This case presents the question whether the doctrine of state-action antitrust immunity recognized in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), applies to a Pennsylvania hospital's denial of physician staff privileges pursuant to its peer review procedures. The district court held that the hospital's conduct was immune. Because it has not been established that Pennsylvania actively supervises such peer review decisions, we will reverse.
 
 I.
 
 2
 Dr. Ralph J. Miller, a licensed physician and surgeon, established a practice in Indiana, Pennsylvania, in 1959. Dr. Miller subsequently purchased land near Indiana Hospital, the only general hospital in Indiana County, and constructed facilities designed to house a variety of medical facilities. According to Dr. Miller, the hospital administrators perceived his plans as a threat to the hospital.
 
 
 3
 In 1977, after a patient under Dr. Miller's care died at the hospital, Dr. Miller was reported to the president of the hospital's medical staff for allegedly rendering inadequate care to the deceased patient and others. Dr. Miller was subsequently notified that the executive committee intended to recommend to the hospital's board of directors that his staff privileges be revoked. Dr. Miller demanded a hearing and was notified of the date of the hearing, the charges, and the witnesses against him. At the hearing, Dr. Miller was represented by counsel and was afforded an opportunity to present and cross-examine witnesses. After a three-day proceeding, the committee decided to revoke Dr. Miller's staff privileges, concluding, among other things, that Dr. Miller had acted improperly in the case of the deceased patient and that he had behaved inappropriately towards various members of the staff. The hearing committee's report and decision were approved and adopted by the executive committee. Dr. Miller appealed this decision to the hospital's board of directors, but the board, after another hearing, affirmed the decision. Dr. Miller's staff privileges were consequently revoked.
 
 
 4
 Dr. Miller then filed an action against the hospital in the Court of Common Pleas of Indiana County, seeking restoration of his staff privileges. Dr. Miller's complaint asserted that the procedures employed by the hospital were defective and violated the hospital by-laws and the Due Process Clause of the Fourteenth Amendment. Although the court initially granted Dr. Miller's ex parte application for a preliminary injunction, the court later dissolved the preliminary injunction and denied permanent relief. On appeal, the Superior Court affirmed. The Superior Court found no breach of the by-laws or other procedural requirements and concluded that Indiana Hospital was not a state actor and was therefore not subject to the Fourteenth Amendment. Miller v. Indiana Hospital, 277 Pa.Super. 370, 419 A.2d 1191 (1980). Dr. Miller's petition for allowance of appeal was denied by the Pennsylvania Supreme Court. See Miller v. Indiana Hospital, 562 F.Supp. 1259, 1269 (W.D.Pa.1983).
 
 
 5
 In 1977 and 1978 Dr. Miller applied for and was denied staff privileges. In 1979, the hospital refused to consider his application, and in later years the hospital refused even to give him an application.
 
 
 6
 In 1980, Dr. Miller filed a petition with the Pennsylvania Department of Health ("DOH") contending that the hospital's refusal to furnish him with an application and to process his application violated state and federal regulations and the hospital by-laws. Dr. Miller's petition requested that the DOH order the hospital to supply him with an application and process his application. The DOH treated Miller's petition as a formal complaint submitted under 1 Pa.Code Sec. 35.9, a provision of general application which states:
 
 
 7
 Any person complaining of anything done or omitted to be done by any person subject to the jurisdiction of any agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency.
 
 Section 35.9 also provides:
 
 8
 the agency [may] ... take ... action which in the judgment of the agency is appropriate.
 
 
 9
 The DOH sent a copy of the petition to the hospital and instructed the hospital to submit a response. The hospital president responded with a letter stating that his letter to Dr. Miller dated December 9, 1980 provided the hospital's response to the petition. That brief letter to Dr. Miller stated that the litigation in the state courts had established that Dr. Miller "had been afforded due process in accordance with the law and the By-laws" and that the hospital therefore considered the matter closed. A short time later, the hospital's attorney sent the DOH a copy of the by-laws and contended the by-laws did not require an application to be provided to Dr. Miller because Dr. Miller was not an "initial applicant" for staff privileges. After receipt of these submissions, the DOH wrote to inform Dr. Miller that no action would be taken on his petition. The DOH letter explained that "neither the Pennsylvania Department of Health hospital regulations nor the bylaws of Indiana Hospital require that Indiana Hospital provide you with an application for medical staff privileges." The letter further explained that the federal regulations were not enforceable by the DOH. After additional correspondence from Dr. Miller, the DOH reaffirmed its decision.
 
 
 10
 Dr. Miller then filed an action in the United States District Court for the Western District of Pennsylvania against the hospital and certain administrators and physicians. Dr. Miller asserted claims under federal civil rights and antitrust statutes, as well as pendent state claims. Dr. Miller's civil rights claims were dismissed in 1983,[1] and in 1987 the district court granted summary judgment for the defendants on the remaining antitrust claims. In doing so, the district court found it unnecessary to reach the defendants' contention that they were immune from federal antitrust liability under Parker v. Brown, supra. Miller v. Indiana Hospital, 660 F.Supp. 250 (W.D.Pa.1987).
 
 
 11
 On appeal, this court reversed and remanded, finding that genuine issues of material fact precluded summary judgment on the ground upon which the district court had relied. Miller v. Indiana Hospital, 843 F.2d 139 (3d Cir.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). This court also noted, however, that the issue of antitrust immunity had not been decided by the district court and should be addressed in the first instance by the district court. 843 F.2d at 145 n. 9.
 
 
 12
 On remand, the district court again granted summary judgment for the defendants, this time based on immunity. Applying the two-prong test set out in California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), for determining whether anticompetitive conduct by private parties should be deemed state action under the Parker doctrine, the district court held that Pennsylvania's regulations governing staff privileges and peer review activities satisfied the "clear articulation" prong and that the DOH's authority and willingness to entertain petitions by aggrieved physicians under 1 Pa.Code Sec. 35.9 satisfied the "active supervision" prong. This appeal followed.[2]
 
 II.
 
 13
 A. The Supreme Court has established a rigorous two-part test for determining whether private anticompetitive conduct should be deemed "state action" for purposes of antitrust immunity. First, the challenged conduct must be undertaken pursuant to a clearly articulated state policy to displace free competition with regulation; second, the state itself must actively supervise the activity. Patrick v. Burget, 486 U.S. 94, 100, 108 S.Ct. 1658, 1663, 100 L.Ed.2d 83 (1988); Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 57, 105 S.Ct. 1721, 1726, 85 L.Ed.2d 36 (1985): California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. at 105, 100 S.Ct. at 943; see also Ticor Title Ins. Co. v. Federal Trade Commission, 922 F.2d 1122 (3d Cir.1991); Bolt v. Halifax Hospital Medical Center, 891 F.2d 810 (11th Cir.1990). Only when both of these requirements are met may private conduct be considered state action exempt from antitrust liability. Patrick v. Burget, 486 U.S. at 100, 108 S.Ct. at 1663.
 
 
 14
 Applying this test, the Supreme Court held in Patrick v. Burget, supra, that hospital peer review determinations in Oregon were not immune from attack under the federal antitrust laws because the "active supervision" prong was not satisfied. The Court first rejected the argument that the supervisory authority possessed by the Oregon Health Division met the active supervision requirement. Although the Health Division had limited authority to review a hospital's peer review procedures, the Health Division lacked the authority to review "the actual decisions made by hospital peer review committees." 486 U.S. at 102, 108 S.Ct. at 1664. The Court observed that a state "does not actively supervise [the termination of privileges] unless a state official has and exercises ultimate authority over private privilege determinations." Id.
 
 
 15
 The Court likewise concluded that the Oregon State Board of Medical Examiners ("BOME") did not satisfy the "active supervision" standard. The Court found no indication that "the BOME has the power to disapprove private privilege decisions." The Court added: "Certainly, [the defendants] have not shown that the BOME in practice reviews privilege decisions or that it ever has asserted the authority to reverse them." Id.
 
 
 16
 Finally, the Court rejected the argument that review by the Oregon courts satisfied the active supervision requirement. Without deciding "whether judicial review of private conduct ever can constitute active supervision," the Court held that any review available in the Oregon courts fell "far short" of what would be needed to establish active supervision. Id. at 104, 108 S.Ct. at 1665. At best, the Supreme Court observed (id.), the Oregon courts would provide review "of a very limited nature." This review, the Court noted, would do no more than ensure that "some sort of reasonable procedure was afforded and that there was evidence from which it could be found that plaintiff's conduct posed a threat to patient care.' " Id. at 105, 108 S.Ct. at 1665, quoting Straube v. Emanuel Lutheran Charity Board, 287 Or. 375, 384, 600 P.2d 381, 386 (1979). Such "constricted review," the Court stated, (id.) would not constitute "active supervision" because it would not reach "the merits of a privilege termination decision to determine whether it accorded with state regulatory policy."
 
 
 17
 B. In light of the teaching of Patrick, the Pennsylvania peer review scheme at issue in this case is not immune from antitrust challenge.[3] We need not consider whether the "clear articulation" standard has been met because it is apparent that the "active supervision" requirement has not been satisfied. Here, as in Patrick, it has not been established that any state governmental organ "has and exercises ultimate authority over private privilege determinations." 486 U.S. at 102, 108 S.Ct. at 1664.
 
 
 18
 The defendants maintain that the Pennsylvania scheme is critically different from the Oregon scheme reviewed in Patrick. Defending the rationale of the district court, the defendants contend that an aggrieved Pennsylvania physician may obtain administrative review of an adverse peer review determination by filing a formal complaint with the Pennsylvania Department of Health under 1 Pa.Code Sec. 35.9. The defendants argue that 1 Pa.Code Sec. 35.9 authorizes DOH to review whether a hospital has complied with the state regulations regarding staff privileges and peer review, particularly 28 Pa.Code Sec. 107.3, which provides that hospitals may not deny staff privileges on the basis of criteria unrelated to professional or ethical competence.[4] If DOH finds that these regulations have been violated, the defendants maintain, DOH can disapprove a peer review decision. Indeed, the defendants assert that DOH "actually exercised these powers" in this case. Appellees' Br. at 28 (emphasis in original).
 
 
 19
 While the defendants' interpretation of the Pennsylvania regulations may ultimately prove correct, we cannot conclude that the "active supervision" requirement has been met without much clearer proof than we have at present that the Pennsylvania authorities share that interpretation and have begun to act accordingly. On its face, the centerpiece of the defendants' argument, 1 Pa.Code Sec. 35.9, does not establish that the DOH has the authority to review "the actual decisions made by hospital peer-review committees." Patrick, 486 U.S. at 102, 108 S.Ct. at 1664. This provision states in extraordinarily broad and general terms that a formal complaint alleging a violation of an applicable statute or regulation may be filed by any person aggrieved by "anything done or omitted to be done by any person subject to the jurisdiction of any agency." This provision does not specifically refer to peer review proceedings, and it does not reveal the nature of any review available when a peer review determination is challenged. Consequently, this provision by itself does not show that the DOH would review peer review decisions in the manner and to the degree demanded by Patrick.
 
 
 20
 Nor have we been directed to any other authority showing that 1 Pa.Code Sec. 35.9 confers the power that the defendants claim. The defendants have not cited any official DOH pronouncements substantiating their interpretation of this provision. The defendants have cited two reported Pennsylvania court decisions in an effort to prove that DOH possesses the authority to review staff privilege decisions. These decisions, however, concern review of agency conduct, rather than review of the conduct of a regulated private entity, and deal with subjects bearing little if any similarity to peer review proceedings. See Cannsburg General Hospital v. Commonwealth Department of Health, 51 Pa.Cmwlth. 156, 413 A.2d 1185 (1980) (DOH determination on hospital's application for federal capital reimbursement); Powers v. Commonwealth Department of Health, 121 Pa.Cmwlth. 321, 550 A.2d 857 (1988) (DOH determination regarding out-patient therapy program). See also Apple v. Commonwealth Department of Insurance, 60 Pa.Cmwlth. 492, 431 A.2d 1183 (1981) (Insurance Commission had power to review dentists' challenge to dental service plan). We cannot conclude based on these authorities that DOH substantively reviews hospitals' decisions regarding staff privileges under 1 Pa.Code Sec. 35.9. In addition, to paraphrase Patrick, 486 U.S. at 103, 108 S.Ct. at 1664, these authorities "[c]ertainly, [do not show] that [the DOH] in practice reviews privilege decisions or that it ever has asserted the authority to reverse them."
 
 
 21
 Finally, we disagree with the defendants' assertion that the DOH's disposition of Dr. Miller's petition showed that it actively supervises peer review decisions. On the contrary, it does not appear that the DOH, in reviewing Dr. Miller's petition, considered anything other than the narrow procedural question whether the hospital was required to provide Dr. Miller with a new application for staff privileges. Dr. Miller's petition requested that the DOH direct the hospital to furnish him with such an application and to process his completed application; his petition did not request that DOH review the hospital's past decision revoking his privileges. The hospital opposed the petition on procedural grounds, i.e., that the hospital by-laws did not require that an application be provided to a physician who was not an "initial applicant"; and the DOH rejected the petition in conclusory terms, stating only that the DOH regulations and hospital by-laws did not require that an application be provided. There is no indication that the DOH received or examined the record of the peer review proceeding. Thus, DOH's disposition of Dr. Miller's petition does not show that DOH reviews peer review determinations in the manner required for antitrust immunity under Patrick.[5]
 
 III.
 
 22
 Because the Commonwealth did not actively supervise peer review determinations at the time relevant to this case, we will vacate the order of the district court and remand for further proceedings.
 
 
 
 *
 The Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991
 
 
 [1]
 Miller v. Indiana Hospital, 562 F.Supp. 1259 (W.D.Pa.1983)
 
 
 [2]
 The events at issue here occurred prior to the effective date of the Health Care Quality Improvement Act of 1986, 42 U.S.C. Secs. 11101-11152 (Supp.1987)
 The defendants have not raised the question, which is now before the Supreme Court, whether a physician who claims that the denial of staff privileges violated Section 1 of the Sherman Act, 15 U.S.C. Sec. 1, must allege a connection between the alleged anticompetitive activity and interstate commerce. See Pinhas v. Summit Health, Ltd., 894 F.2d 1024 (9th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).
 
 
 [3]
 Whether given conduct qualifies as state action for purposes of antitrust immunity is a question of law, and our review is plenary. Ticor Title Ins. Co. v. Federal Trade Commission, 922 F.2d at 1123
 
 
 [4]
 28 Pa.Code Sec. 107.3 provides as follows:
 (a) In order to receive favorable recommendation for appointment or reappointment members of the medical staff must always act in a manner consistent with the highest ethical standards and levels of professional competence.
 (b) Privileges granted shall be commensurate with an individual's qualifications, experience, and present capabilities.
 (c) No applicant shall be denied medical staff privileges on the basis of sex, race, creed, color, or national origin or on the basis of any other criterion lacking professional or ethical justification, including association with a prepaid group practice.
 It appears that 28 Pa.Code Sec. 107.3 and many of the other regulations upon which the defendants rely were not in effect during the period from 1977 to 1980 when Dr. Miller's privileges were revoked and his subsequent applications for privileges were submitted and denied. In 1972, the Pennsylvania Department of Public Welfare promulgated regulations governing the staffs of general and special hospitals. Pa.Bulletin, Vol. 2, No. 27, Secs. 2.1.3.2, 4-4.10.3 (June 24, 1972). In 1977, a more detailed set of regulations, including those cited by the defendants, was promulgated. See 28 Pa.Code Sec. 101 et seq. It appears, however, that these regulations did not become effective until February 1, 1980, when the Pennsylvania Supreme Court vacated a stay it had placed on the regulations pending the appeal of an unsuccessful challenge to their validity. See Hospital Ass'n of Pennsylvania v. MacLeod, 487 Pa. 516, 410 A.2d 731, 733 n. 4-5 (1980). As discussed below, however, the active supervision test has not been met even after the more detailed regulations took effect.
 
 
 [5]
 On appeal, the defendants have not renewed their argument, which was rejected by the district court based on Rosenberg v. Holy Redeemer Hospital, 351 Pa.Super. 399, 407, 506 A.2d 408, 412 (1986), appeal denied, 514 Pa. 643, 523 A.2d 1132 (1986), that the Pennsylvania courts actively supervise peer review determinations. Consequently, we need not and do not reach this contention. Cf. Bolt v. Halifax Hospital Medical Center, 891 F.2d 810 (11th Cir.1990) (panel found Florida's regulatory scheme provided sufficiently probing judicial review to satisfy active supervision under Patrick, but decision vacated en banc and hospital defendants subsequently waived the state action immunity defense)